UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



March 29, 2021

Arjun K. Murahari, Esq.
Mignini, Raab & Demuth, LLP
606 Baltimore Ave., Ste. 101
Towson, MD 21204

Stacey W. Harris, Esq.
Special Assistant United States Attorney
Social Security Administration
6401 Security Blvd.
Baltimore, MD 21235

Subject: *Bernardo R. v. Saul*
Civil No. GLS 19-2082

Dear Counsel:

Pending before this Court are cross-Motions for Summary Judgment. (ECF Nos. 15, 20). The Court must uphold the decision of the Social Security Administration ("SSA") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* Upon review of the pleadings and the record, the Court finds that no hearing is necessary. Local Rule 105.6. For the reasons set forth below, Plaintiff's motion is DENIED and the SSA's motion is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the judgment of the SSA is AFFIRMED.

I.   BACKGROUND

Plaintiff filed a Title II Application for Disability Insurance Benefits on January 6, 2015, alleging that disability began on July 25, 2014. (Tr. 15). This claim was initially denied on June 2, 2015, and upon reconsideration, denied again on September 24, 2015. (Tr. 15). Plaintiff's request for a hearing was granted and the hearing was conducted on October 4, 2017, by an Administrative Law Judge ("ALJ"). (Tr. 15, 35-74). On April 11, 2018, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 15-29). On May 19, 2019, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1-5).

*Bernardo R. v. Saul*
Civil No. GLS 19-2082
March 29, 2021
Page 2

**II.     ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if their "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 415.1520(a)(4)(i)-(v); 416.920. *See e.g., Bowen v. Yuckert,* 482 U.S. 137, 140-42 (1987); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assesses whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determines whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertains whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, the ALJ assesses the claimant's residual functional capacity ("RFC"), i.e., the most the claimant could do despite their limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). At step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her impairments; and at step five, the ALJ analyzes whether a claimant could perform any work. At steps one through four, it is the claimant's burden to show that they are disabled. *See Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and therefore, is not disabled. *Id*. at 180.

Here, the ALJ found that Plaintiff suffered from the following severe impairments: "arthralgias (possibility related to Lyme disease), lumbar degenerative disc disease (with facet hypertrophy, stenosis, and lower back pain), and depression." (Tr. 18). Recognizing those severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform light work . . . except the [Plaintiff] can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently . . . can sit, stand, or walk for six hours in an 8-hour workday . . . requires the ability to change positions approximately every 30 minutes while remaining on task . . . can occasionally reach overhead with the bilateral upper extremities . . . can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds . . . can occasionally balance, stoop, kneel, crouch, and crawl . . . can never work at unprotected heights or around moving mechanical parts . . .

> is limited to performing simple, routine, and repetitive tasks but not at a production rate pace (such as assembly line work) . . . is limited to simple work-related decisions and can tolerate few changes in a routine work setting (defined as a performing the same duties at the same station or location day to day) . . . can tolerate occasional superficial contact with supervisors or coworkers, with no tandem tasks or team-type activities . . . [and] can have no contact with the public.

(Tr. 22). At the hearing, a vocational expert ("VE") testified that Plaintiff's past relevant work was as an auto mechanic and as an auto parts counter salesperson. (Tr. 67). The VE ultimately testified that a hypothetical individual with the same RFC as Plaintiff would be able to perform work as a pre-assembler of circuit boards, as an inspector, and as an assembler of small parts. (Tr. 28, 67-70). The ALJ determined Plaintiff was not disabled because he was able to perform work that exists in significant numbers in the national economy, e.g., as a pre-assembler of circuit boards, as an inspector, and as an assembler of small parts. (Tr. 28-29).

## III.   DISCUSSION

On appeal, Plaintiff argues that: (1) the ALJ failed to provide an adequate narrative discussion describing how the evidence supports each conclusion in the RFC assessment; and (2) the ALJ failed to give proper weight to the medical opinions of consultative examiners Dr. Nalin Mathur and Martha Merrion, PhD, and state agency psychological consultant D. Walcutt, PhD. (ECF No. 15-1, pp. 10-18). I find neither of Plaintiff's arguments persuasive. Accordingly, I affirm the Commissioner's decision for the reasons set forth below.

    A.    <u>The ALJ's Narrative Discussion Adequately Supports the ALJ's RFC Determination</u>

First, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to provide a narrative discussion that identifies the evidence supporting her conclusion and builds an accurate and logical bridge from that evidence to her conclusion. (ECF No. 15-1, pp. 9-10). The SSA counters that Plaintiff's arguments are boilerplate other courts in this district have repeatedly rejected. In addition, the SSA avers that the ALJ provided a five-page narrative discussion of the evidence she evaluated, that included objective medical evidence, medical opinions, and the Plaintiff's own testimony. (ECF No. 20-1, p. 6).

Social Security Ruling ("SSR") 96-8p, requires that an ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts … and non-medical evidence." 1996 WL 374184, at *7. This includes a discussion of "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

*Bernardo R. v. Saul*
Civil No. GLS 19-2082
March 29, 2021
Page 4

*Mascio v. Colvin*, 780 F.3d 632, is instructive. In *Mascio*, the Fourth Circuit held that remand is necessary where an ALJ fails to discuss a claimant's ability to perform certain functions for a full workday despite the existence of conflicting record evidence as to the claimant's ability to perform those functions. *Id.* at 637. Remand was required, then, because the ALJ did not clearly explain which evidence supported the RFC determination.

Here, the ALJ provided a four-page evaluation of: (a) Plaintiff's treatment records; (b) the record opinion evidence; and (c) hearing testimony, and credibility determinations related thereto. The ALJ amply supported her findings as to Plaintiff's RFC, and built an accurate and logical bridge between the record evidence and her conclusions. (Tr. 22-27). Plaintiff's boilerplate arguments do not identify any specific deficiencies in the RFC determination, and lack any discussion as to how a more detailed RFC assessment would have resulted in a different outcome. *See Stanley v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG 11-671, 2013 WL 2455984, at *1 (D. Md. June 4, 2013) (rejecting boilerplate argument consisting "entirely of boilerplate excerptions from the Social Security regulations" and lacking analysis of how a more detailed assessment might have resulted in a different outcome). Therefore, I reject Plaintiff's argument that insufficient evidence supports the RFC determination. I similarly reject the argument that the ALJ failed to build an accurate and logical bridge from the evidence to her conclusion. *See Chandler v. Comm'r Soc. Sec.*, Civ. No. SAG 12-2712, 2014 WL 457746, at *2 (D. Md. Jan. 13, 2014) (rejecting Plaintiff's "continuously recycled argument" that the ALJ failed to provide a proper function-by-function narrative discussion of her RFC where the ALJ's narrative discussion summarized Plaintiff's testimony, made a credibility determination, and reviewed medical records and opinion evidence).

      B.      <u>The ALJ Properly Evaluated the Medical Opinion Evidence</u>

Plaintiff also argues that the ALJ failed to give proper weight to the medical opinions of state agency psychological consultant D. Walcutt, PhD, and consultative examiners Dr. Nalin Mathur and Martha Merrion, PhD. (ECF No. 15-1, pp. 10-18). For the reasons explained below Plaintiff's argument lacks merit.

The law is clear that 20 C.F.R. § 404.1527 governs an ALJ's evaluation of medical opinion evidence. A medical opinion must be consistent "with the record as a whole," and that consistency is a "factor to be used to determine the weight to be given any other medical opinion, whether from a treating source not accorded controlling weight or from a nontreating source." *Brown v. Comm'r, Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017) (quoting 20 C.F.R. 404.1527(c)(4)). When evaluating the weight to afford a medical opinion, an ALJ considers the following non-exclusive factors:

> (1) whether the source of the information examined the claimant; (2) the treatment relationship between the source and the claimant; (3) the supportability of the source's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the source is a specialist; and (6) any other factors that tend to support or contradict

the opinion.

*Carter v. Astrue*, Civ. No. CBD 10-1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011) (citing 20 C.F.R. § 404.1527.d(3)-(6)).

### 1. <u>The ALJ Properly Weighed Dr. Nalin Mathur's Medical Opinion</u>

Plaintiff asserts that the ALJ improperly accorded Dr. Mathur's examination little weight in the following manner. First, by failing to explain how Dr. Mathur's opinion was inconsistent with the record as a whole; second, by downplaying Dr. Mathur's findings that Plaintiff had significant restrictions; and third, by failing to recognize that Dr. Mathur's statement, "I do not see any problem with standing," was a transcription error. (ECF No. 15-1, pp. 11-14). The SSA counters that Plaintiff's argument ignores the ALJ's finding that Dr. Mathur's opinion was inconsistent with Plaintiffs' medical imaging records, which indicate no cervical abnormalities and only minimal lumbar abnormalities. The SSA also contends that Plaintiff fails to identify any limiting symptoms in Dr. Mathur's opinion that the ALJ did not address in her summary of Dr, Mathur's findings. Finally, the SSA challenges Plaintiff's argument that a "transcription error" impacted Dr. Mathur's opinion regarding Plaintiff's ability to stand, arguing that Plaintiff cited no evidence to support this claim and that the ALJ was entitled to rely on Dr. Mathur's certification that his report was accurate. (ECF No. 20-1, pp. 8-9).

Dr. Nalin Mathur examined Plaintiff once, on April 24, 2015, performing a physical medicine consultative examination. (Tr. 24, 438). Dr. Mathur noted that the Plaintiff appeared to be depressed, had limited joint range of motion, an abnormal gait and station, and a markedly decreased ability to bear weight. (Tr. 439). Dr. Mathur also opined that he "did not see any problem in (sic) standing, but [Plaintiff] cannot stand more than 10 or 15 minutes and same thing with walking and lifting (sic)." (Tr. 430). Dr. Mathur further noted that Plaintiff could not "do more than one block of walking at a time" and could not handle or carry objects that weighed more than 2 or 3 pounds. (Tr. 430-440). The ALJ gave Dr. Mathur's entire assessment little weight because it was not consistent with the overall record, "including Dr. Mathur's relatively mild findings on examination." (Tr. 24).

Plaintiff's argument that the ALJ failed to explain how Dr. Mathur's opinion was inconsistent with the record lacks merit. The ALJ discussed several ways in which Dr. Mathur's findings were contradictory or inconsistent with other record evidence. Specifically, the ALJ cited three such inconsistencies. First, Dr. Mathur observed that Plaintiff had "normal grip strength, and only decreased range of motion and tenderness in the upper extremities," which contradicted his other opinion that Plaintiff had "markedly decreased weight handling and carrying limitations." Second, Dr. Mathur's assessments—that "he did not see any problem [when Plaintiff was] standing;" Plaintiff did not require any ambulatory aid; and Plaintiff had only slightly abnormal station—were contradicted by Dr. Mathur's own opinion that Plaintiff could not stand for more than fifteen minutes. And third, Plaintiff's imaging records reflect that Plaintiff had no cervical abnormalities and only minimal lumbar abnormalities, which the ALJ found to contradict Dr. Mathur's assessment of his cervical and lumbar abnormalities. (Tr. 23-24, 469, 475). I find that

*Bernardo R. v. Saul*
Civil No. GLS 19-2082
March 29, 2021
Page 6

substantial evidence in the record supports the first two inconsistencies the ALJ identified. However, I cannot conclude that the third inconsistency identified by the ALJ is supported by substantial evidence because the ALJ did not adequately explain how Plaintiff's imaging records contradict Dr. Mathur's assessment of Plaintiff's cervical and lumbar abnormalities. Thus, given Dr. Mathur's contradictory statements regarding the severity of Plaintiff's physical impairments, I find the ALJ's decision to afford Dr. Mathur's opinion little weight to be supported by substantial evidence. *See Carter*, 2011 WL 3273060 at *7-9 (ALJ's decision to afford medical opinions little weight was supported by substantial evidence where ALJ cited the inconsistent medical notes of Plaintiff's treating physician, the notes of his nurse practitioner, contradictory evaluations from mental health experts on the issue of depression, and a contradictory medical assessment of the claimant's physical impairments).

Nor do I find either of Plaintiff's remaining arguments persuasive. Plaintiff's assertion that the ALJ ignored his significant restrictions is not supported by the record. The ALJ discussed Dr. Mathur's findings, including those the ALJ determined to be "relatively unremarkable." Rather, Plaintiff's argument is an attempt to have this Court reweigh the evidence in the record, which this Court sitting in review cannot do. *See Bostrom v. Colvin*, 134 F. Supp. 3d 952, 959 (D. Md. 2015) (citations omitted) ("evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence . . . or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner"). Finally, Plaintiff has not presented any evidence that Dr. Mathur's statement, "I do not see any problem with [Plaintiff's] standing," was a transcription error. In the absence of any evidence to the contrary, the Court cannot read a change into a transcript. *See Bellamy v. Apfel*, 110 F. Supp. 2d 81, 88 (D. Conn. 2000) (rejecting claim asserting portion of vocational expert's testimony was erased from hearing transcript because the claimant failed to provide a sworn statement, or any other verification, that the vocational expert testified as the claimant alleged). Therefore, I find the ALJ's decision to accord little weight to Dr. Mathur's medical opinion to be supported by substantial evidence.

2. The ALJ Properly Weighed Dr. D. Walcutt's Medical Opinion

Next, Plaintiff contends that his RFC determination was erroneous due to the ALJ's failure to consider Dr. Walcutt's opinion that Plaintiff could experience "occasional interruptions from psychologically based symptoms." (ECF No. 15-1, pp. 15-16). According to the Plaintiff, because "occasionally" is defined under the Social Security regulations as an activity or condition that "occurs at least once up to one-third of an 8-hour workday," such "occasional interruptions" could result in a finding of disability when considered together with the vocational expert's testimony that twenty percent off task behavior by Plaintiff would be work preclusive. (ECF No. 15-1, p. 16). The SSA counters that Plaintiff's argument that he could be off task for up to twenty percent of the workday is based on mere speculation and is inconsistent with Dr. Walcutt's opinion indicating that Plaintiff could complete a normal workday and workweek despite occasional interruptions from psychologically based symptoms. (ECF No. 20-1, pp. 9-10).

*Bernardo R. v. Saul*
Civil No. GLS 19-2082
March 29, 2021
Page 7

Dr. Walcutt, a state agency psychological consultant, reviewed Plaintiff's file and conducted a Mental Residual Functional Capacity Assessment of Plaintiff on September 23, 2015. Dr. Walcutt opined that "Plaintiff had the residual functional capacity to understand and remember simple and detailed instructions, and could maintain attention and concentration for at least two hours." (Tr. 25, 97-98). Dr. Walcutt also noted that Plaintiff could "complete a normal workday and workweek without an unreasonable number and length of rest periods." (Tr. 98). In assessing Dr. Walcutt's medical opinion, the ALJ only gave his opinion partial weight where it was generally consistent with the overall evidence of record showing Plaintiff had severe mental impairments. (Tr. 25).

I do not find Plaintiff's argument persuasive. Although the ALJ erred by failing to discuss Dr. Walcutt's opinion that Plaintiff might experience "occasional interruptions from psychologically based symptoms," any error resulting from this omission was harmless because the ALJ would have come to the same result. *See Daemer v. Berryhill*, Civ. No. GLS 17-01724, 2018 WL 4565571, at *3 (D. Md. Sept. 24, 2018) (finding ALJ's failure to discuss the weight accorded to opinion of state agency psychiatric consultant was harmless error because "the ALJ would have come to the same result if the opinion was discussed"). Dr. Walcutt opined that despite occasional interruptions from psychologically based symptoms, Plaintiff "has the ability to complete a normal workday and workweek without an unreasonable number and length of rest periods," a conclusion that is generally consistent with other record evidence of Plaintiff's psychological impairments. (Tr. 97-98). Next, of note is the fact that Michelle Butler, PsyD, opined that despite "occasional interruptions from psychologically based symptoms," Plaintiff has the "ability to complete a normal workday and workweek without an unreasonable number and length of rest periods." (Tr. 82-83). Also noteworthy is the opinion of Dr. Martha Merrion, who conducted a psychological consultative examination of Plaintiff. Dr. Merrion similarly opined that based on Plaintiff's psychological impairments he "has a mild to moderately impaired ability to maintain regular attendance in the competitive work place, and complete a normal workday or workweek without interruptions from a psychiatric condition." (Tr. 450). In sum, because the ALJ's assessment of Dr. Walcutt's opinion that Plaintiff could complete a normal workday and workweek is supported by substantial evidence in the record, the failure to discuss the omitted portion of Dr. Walcutt's opinion was harmless error and remand on this basis is not proper.

### 3. The ALJ Properly Weighed Dr. Martha Merrion's Medical Opinion

Finally, Plaintiff argues that the ALJ incorrectly accorded Dr. Merrion's medical opinion great weight by failing to acknowledge that Dr. Merrion's definition of "moderate" differed from that used by the SSA in its regulations, resulting in an erroneous RFC determination. Plaintiff also contends that the ALJ failed to consider the correlation between his mental and physical impairments when evaluating Dr. Merrion's opinion. According to Plaintiff, had the ALJ considered his mental health conditions in conjunction with his physical limitations, the ALJ would have found Plaintiff to be "off task" more than twenty percent of the time. Plaintiff contends that such a finding would be work preclusive. (ECF No. 15-1, pp. 11-12, 15-18). The SSA counters that Dr. Merrion's use of the term "moderate" in a way that differs from the definition in the Social Security regulations did not require the ALJ to disregard her opinion, as there is no

*Bernardo R. v. Saul*
Civil No. GLS 19-2082
March 29, 2021
Page 8

requirement that a medical opinion use the same language as that employed by the SSA. In addition, the SSA avers that Dr. Merrion's opinion does not contain any findings suggesting that Plaintiff would be "off task" twenty percent of the time. (ECF No. 20-1, p. 10).

Dr. Merrion conducted a psychological consultative examination of the Plaintiff on April 27, 2015. Dr. Merrion noted that Plaintiff had a history of depression, anxiety, heart attack and related surgeries, narrowing of the spinal canal, and arthritis. Dr. Merrion opined that Plaintiff had mild to moderate limitations in his ability to understand, remember, and carryout instructions, and in his ability to maintain regular attendance, and complete a normal workday or workweek. As part of her determination that Plaintiff had the RFC to perform light work, the ALJ accorded Dr. Merrion's opinion great weight, explaining it was consistent with the overall record showing the Plaintiff "has a severe mental impairment that no more than moderately affects his ability to perform tasks, interact socially at work, adapt to workplace changes, and maintain a work schedule." (Tr. 24-25, 443-453).

In her report, Dr. Merrion used "moderate" to mean "some problems that might be successfully dealt with through modifications or accommodations." (Tr. 449). The Social Security regulations define "moderate" to mean "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c). Plaintiff is correct that Dr. Merrion used a different definition of "moderate" than that provided in the Social Security regulations. However, I do not find persuasive Plaintiff's argument that the ALJ's failure to acknowledge Dr. Merrion's definition of "moderate" resulted in an erroneous RFC determination. Substantial evidence in the record supports Dr. Merrion's conclusion that "Plaintiff has a severe mental impairment that no more than moderately affects his ability to perform tasks, interact socially at work, adapt to workplace changes, and maintain a work schedule." (Tr. 25). Both Dr. Walcutt and Michelle Butler, PsyD, reached similar conclusions regarding the impact of Plaintiff's psychological impairments on his ability to complete a normal workday or workweek. (Tr. 82-83; 97-98). Similarly, Plaintiff's assertion that Dr. Merrion's opinion supports a finding that he would be off task twenty percent of the time is without merit. No such finding is included in Dr. Merrion's consultative examination report. (Tr. 443-453). Accordingly, I find that the ALJ did not err in giving great weight to the opinion of Dr. Merrion.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 15), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 20), is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

*Bernardo R. v. Saul*
Civil No. GLS 19-2082
March 29, 2021
Page 9

                                               Sincerely,

                                               _____/s/_____
                                               The Honorable Gina L. Simms
                                               United States Magistrate Judge